IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VONDELL LEWIS, | No. C-09-0551 TEH (PR) |
|     Petitioner, | |
|     v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| BEN CURRY, Warden | |
|     Respondent. | |

Pro se Petitioner Vondell Lewis, a state prisoner incarcerated at the California Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") May 7, 2008 decision to deny him parole, which, for the reasons that follow, the Court denies.

I

The California Court of Appeal summarized the factual background of the case in an unpublished opinion as follows:

> [D]uring the early morning hours of August 30,

> 1990, [Petitioner], Edna Gonzales and Curtis Fairley were consuming cocaine and beer outside a house belonging to "A-Day." Gonzales, the only eyewitness, stated that she had not slept and had been using cocaine and drinking beer for the previous 24 hours. She also testified that a "problem" between A-Day and Fairley developed and A-Day ordered Fairley off of the property. Fairley refused to leave and he and A-Day argued for approximately one hour. [Petitioner] joined in and also ordered Fairley to leave. When Fairley, who was "loaded" and crying, still refused to leave, [Petitioner], who was "kind of buzzed," struck him. Gonzales could not recall whether [Petitioner] or Fairley was the man who brandished a knife, but Fairley picked up and threw a bottle at [Petitioner].
>
> [Petitioner] left the area and returned approximately 15 minutes later carrying a sock which apparently contained a gun. [Petitioner] resumed the argument with Fairley, then suddenly ran inside the house, leaving Fairley outside. Inside, [Petitioner] appeared angry and pointed the gun at the others present and stated that he would shoot Fairley if Fairley continued "messing" with him. [Petitioner] then went back outside, pointed the gun at Fairley and stated, "I'll put this through your . . . head." [Petitioner] then fired the gun, fatally wounding Fairley. The autopsy revealed recent cocaine use by Fairley and concluded death was caused by a single bullet wound.

Doc. #6-1 at 33-34.

On May 6, 1991, Petitioner was sentenced to twenty years to life in state prison following his conviction of second degree murder with an attached firearm enhancement. Doc. #1-1 at 2. His minimum eligible parole date was September 30, 2003. Doc. #6-1 at 15.

On May 7, 2008, Petitioner appeared before BPH for his third parole suitability hearing. Doc. #6-1 at 15. At that hearing, BPH found Petitioner was "not suitable for parole and would

2

1  pose an unreasonable risk of danger to society or a threat to public
2  safety if released from prison." Id. at 41.  BPH cited several
3  reasons to support its decision, including:  (1) that the commitment
4  offense "was carried out in a dispassionate and calculated manner"
5  in that Petitioner "shot an unarmed man . . . in the head during an
6  argument;" (2) that Petitioner was convicted of voluntary
7  manslaughter as a juvenile for a crime that also involved the use of
8  a handgun; (3) that Petitioner "failed to profit from society's
9  previous attempts to correct [his] criminal behavior," which
10 included previous grants of juvenile and adult probation and a
11 commitment to the California Youth Authority; (4) Petitioner's
12 history of substance abuse and association with gangs; and (5) a
13 psychological evaluation that found Petitioner as presenting "a
14 moderate risk" for future violence.  Doc. #6-1 at 41-44 & 47.
15         Petitioner unsuccessfully challenged BPH's decision in the
16 state superior and appellate courts.  Doc. #6-3 at 14-17; Doc. #6-4
17 at 2.  On January 21, 2009, the California Supreme Court summarily
18 denied Petitioner's Petition for Review.  Doc. #6-6 at 2.  This
19 federal Petition for a Writ of Habeas Corpus followed.  Doc. #1.
20         Per order filed on April 22, 2009, the Court found that
21 Petitioner's claim that BPH violated his due process rights, when
22 liberally construed, was colorable under § 2254, and ordered
23 Respondent to show cause why a writ of habeas corpus should not be
24 granted.  Doc. #5.  Respondent has filed an Answer and Petitioner
25 has filed a Traverse.  Doc. ## 6 & 7.

3

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application

1  of Supreme Court precedent, the only definitive source of clearly
2  established federal law under 28 U.S.C. § 2254(d) rests in the
3  holdings (as opposed to the dicta) of the Supreme Court as of the
4  time of the state court decision.  <u>Williams</u>, 529 U.S. at 412; <u>Clark
5  v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

### III

Petitioner seeks federal habeas corpus relief from BPH's May 7, 2008 decision finding him unsuitable for parole and denying him a subsequent parole suitability hearing for two years on the ground that the decision does not comport with due process.

### A

Under California law, prisoners like Petitioner who are serving indeterminate life sentences for noncapital murders, i.e., those murders not punishable by death or life without the possibility of parole, become eligible for parole after serving minimum terms of confinement required by statute.  <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1077-78 (2005).  At that point, California's parole scheme provides that BPH "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration."  Cal. Penal Code § 3041(b).  Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the

judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a).  In making this determination, BPH must consider various factors, including the prisoner's social history, past criminal history and base and other commitment offense, including behavior before, during and after the crime.  See Id. § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" that cannot be denied without adequate procedural due process protections." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support BPH's decision finding him unsuitable for parole. Sass, 461 F.3d at 1125.  This "some evidence" standard is deferential but ensures that "the record is not so devoid of evidence that the findings of [the board] were without support or otherwise arbitrary." Superintendent v. Hill, 472 U.S. 445, 457 (1985).  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455.  Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by

1  the disciplinary board." Id. at 455-56.

2  Due process also requires that the evidence underlying
3  BPH's decision have some indicium of reliability. Biggs, 334 F.3d
4  at 915; McQuillion, 306 F.3d at 904. Relevant to this inquiry is
5  whether the prisoner was afforded an opportunity to appear before,
6  and present evidence to, BPH. See Pedro v. Oregon Parole Bd., 825
7  F.2d 1396, 1399 (9th Cir. 1987). If BPH's determination of parole
8  unsuitability is to satisfy due process, there must be some reliable
9  evidence to support the decision. Rosas v. Nielsen, 428 F.3d 1229,
10 1232 (9th Cir. 2005).

11
12                                   B

13 Petitioner claims BPH's finding that he was unsuitable for
14 parole violated his due process rights because the decision was not
15 supported by "some evidence." Doc. #1-1 at 6. Specifically,
16 Petitioner disputes the sufficiency of the permissible evidence upon
17 which BPH relied in rendering its decision to deny Petitioner parole
18 and argues that the superior court's denial of his petition was
19 based upon an unreasonable determination of the facts in light of
20 the evidence presented. Id. at 6 & 15-18.

21 The record shows that BPH relied on several circumstances
22 tending to show unsuitability for parole and that these
23 circumstances formed the basis for its conclusion that Petitioner
24 was "not suitable for parole and would pose an unreasonable risk of
25 danger to society or a threat to public safety if released from
26 prison." Doc. #6-1 at 41; see Cal. Code Regs. tit. 15, § 2402(a)
27
28                                   7

1  (stating that a prisoner determined to be an unreasonable risk to
2  society shall be denied parole).
3         First, regarding the commitment offense, BPH noted:
4         [T]he offense was . . . carried out in a
          dispassionate and calculated manner in the fact
5         that[] . . . an unarmed man was shot in the head
          during an argument. . . .  After the victim was
6         shot, he was left on the ground, no aid was
          rendered.  Matter of fact, [Petitioner] said
7         that he saw [the] victim with a hole in his head
          and left the scene.  Motive for the crime was
8         very trivial in nature.  The victim and . . .
          [Petitioner] had been involved in a physical
9         altercation, but the victim did not have [a]
          weapon.
10
11 Doc. #6-1 at 41-42; see Cal. Code Regs. tit. 15, § 2402(c)(1)(B)
12 (listing "dispassionate and calculated manner" as a factor tending
13 to show the commitment offense demonstrates an unsuitability for
14 parole).
15         Second, BPH addressed Petitioner's previous record of
16 violence, noting: [T]here was extensive criminal history. . . .
17 [Petitioner] had been convicted of manslaughter, had used a gun
18 before . . . .  [Petitioner] ha[s] on . . . one occasion killed an
19 individual. [Petitioner] w[as] 14 years old.  [He] ha[s] an
20 escalating pattern of criminal misconduct. Doc. #6-1 at 43-44; see
21 Cal. Code Regs. tit. 15, § 2402(c)(2) (listing "previous record of
22 violence" as factor tending to show unsuitability for parole,
23 "particularly if the prisoner demonstrated serious assaultive
24 behavior at an early age").
25         Third, BPH commented on Petitioner's social history,
26 observing:
27
28                                    8

> [Petitioner] ha[s] a history of unstable relationships.  [Petitioner] associated . . . with . . . known drug users . . . . and lost [a basketball scholarship] because of [his own] drug use.  [Petitioner] failed to profit from society's previous attempts to correct [his] criminal behavior.  [He] had juvenile probation, . . . adult probation, and [he] had a CYA commitment.  None of these factors were instrumental in correcting [his] behavior.

Doc. #6-1 at 44; see Cal. Code Regs. tit. 15, § 2402(c)(3) (listing "unstable social history" as factor tending to show unsuitability for parole).  Fourth and somewhat related, BPH acknowledged Petitioner's history of substance abuse and association with gangs.  Doc. #6-1 at 42-43; see also id. at 44 (Petitioner was already involved in drugs by age fourteen).

Fifth, BPH noted that Petitioner's March 19, 2008 psychological evaluation was "not totally supportive of release" and assessed him as presenting "a moderate risk for violence" because his statements about the crime suggested an "inability to take responsibility for his actions" and because of his "pattern of minimizing the seriousness of his anger and impulse control."  Doc. #6-1 at 45 & 47.

BPH also considered other factors tending to support suitability for parole including Petitioner's positive institutional behavior and limited misconduct while in prison.  Doc. #6-1 at 44-45.  BPH commended Petitioner's "realistic parole plans" that included living with and caring for his father who had a stroke and procuring employment.  Id. at 48.  BPH also acknowledged that Petitioner possessed a marketable skill and participated in

9

educational programs while in prison.  Id. at 45.

The state superior court affirmed the decision of BPH to deny Petitioner parole, finding that the record contained "some evidence" to support BPH's finding that Petitioner was unsuitable for parole.  Doc. #7-2 at 2.  Indeed, in addressing Petitioner's claim challenging BPH's decision, the superior court noted:

> [T]he Court . . . finds that there is some evidence to support [BPH's] finding that the committed offense was carried out in a dispassionate and calculated manner.  [Citation.]  The record indicates that after the argument took place, the Petitioner left and returned 15 minutes later with a gun which was hidden in a sock.  The Petitioner subsequently shot the victim in the head after threatening him.  [Citation.]  There is also some evidence that the motive for the crime was very trivial in relation to the offense.  [Citation.]
>
> The Court also finds that the Petitioner had a previous criminal history, including acts of assault at an early age.  [Citation.]  The record indicates that the Petitioner committed voluntary manslaughter when he was 14 years of age.  He also provided false identification to a police officer.
>
> Furthermore, the psychological report which was prepared in 2008 was not fully supportive of release and found the Petitioner to be a moderate risk of violence.  It noted that the Petitioner had been involved in heavy drug use at an early age and had killed another man at the age of 14.  It also appears that the Petitioner minimizes his crime by suggesting that it should have been treated as a voluntary manslaughter case at most, even as he denies having committed the crime. . . .  [A] Petitioner's inability to gain insight into his antisocial behavior may provide some evidence that the Petitioner's [sic] remains dangerous and is unsuitable for parole.

Doc. #6-3 at 15.  The superior court also found, however, that there

1  was:
2      *no* evidence to support [BPH's] finding that the
3      offense was carried out in manner which
    demonstrates an exceptionally callous disregard
4      for human suffering." [Citation.] An
    "exceptionally callous disregard for human
5      suffering" means that "the offense in question
    must have been committed in a more aggravated or
6      violent [manner] than that ordinarily shown in
    the commission of second degree murder."
7      [Citation.] Petitioner did the minimum to
    commit his crime, one shot to the victim's head.
8      [Citation.]

9  Doc. #6-3 at 14-15, emphasis added. The state appellate court
10 summarily denied Petitioner's request for habeas corpus relief, Doc.
11 #6-4 at 2, and the state supreme court summarily denied his Petition
12 for Review. Doc. #6-6 at 2.

14                        C

15     On this record, the Court finds that the state courts'
16 rejection of Petitioner's due process claim that BPH's decision was
17 not supported by "some evidence" was not contrary to, nor did it
18 involve an unreasonable application of, clearly established federal
19 law, and it was not based on an unreasonable determination of the
20 facts. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.
21     The record shows that BPH had some reliable evidence to
22 support its finding of unsuitability. BPH observed that Petitioner
23 as a juvenile had a prior conviction of manslaughter involving the
24 use of a handgun, multiple prior probation and parole failures, a
25 history of substance abuse and association with gangs, and a recent
26 psychological evaluation that labeled him as presenting a "moderate

1  risk of violence." Doc. #6-1 at 41-48.  Based on these
2  considerations, especially when viewed in conjunction with the
3  nature of the commitment offense, this Court cannot say that BPH's
4  finding that Petitioner was unsuitable for parole was "without
5  support or otherwise arbitrary."  See Hill, 472 U.S. at 457.
6       Based on the record before the Court, BPH reasonably
7  concluded that Petitioner was not yet suitable for parole.  See,
8  e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based
9  on gravity of offense and the petitioner's psychiatric reports
10 documenting his failure to complete programming while in prison);
11 Biggs, 334 F.3d at 916 (upholding denial of parole based on gravity
12 of offense and the petitioner's conduct prior to imprisonment);
13 Morales v. California Dep't. of Corrections, 16 F.3d 1001, 1005 (9th
14 Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995) (upholding
15 denial of parole based on the cruel nature of offense, the
16 petitioner's unstable and criminal history, and his need for further
17 psychiatric treatment).  It is not up to this Court to "reweigh the
18 evidence."  Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //

**12**

**IV**

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is DENIED.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED     11/12/09

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.09\Lewis-09-551-bph denial.wpd

13